UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**WARREN WYATT WIEGAND**, and
**CAMILLE ANITA WIEGAND**,

Debtors.

Case No. **07-60620-13**

# MEMORANDUM OF DECISION

At Butte in said District this 9th day of October, 2007.

In this Chapter 13 case, in which the Trustee objected to confirmation on the grounds the Debtors deducted ordinary and necessary business expenses from their gross income from the operation of a business in calculating their applicable commitment period and disposable income under 11 U.S.C. § 1325(b) (Docket No. 14), the Court overruled the Trustee's objection at hearing held on September 21, 2007. Although the Court overruled the Trustee's objection, the Court directed the Debtors to amend their Plan to include an executory contract which generated income, and reset the hearing on confirmation for October 12, 2007[1]. The Court advised the parties that it would enter this Memorandum of Decision setting forth its reasoning. This

---

[1] Debtors filed their amended Plan on September 27, 2007.

1

memorandum contains the Court's findings of fact and conclusions of law to this Court's Order, Docket No. 30, entered September 24, 2007[2].

The facts are not in dispute. Warren Wyatt Wiegand and Camille Anita Wiegand (together "Wiegands") filed a joint Chapter 13 petition on May 31, 2007, and filed their Schedules, Statement of Financial Affairs and Form 22C on June 15, 2007. Wiegands filed their original Chapter 13 Plan on June 19, 2007, proposing monthly plan payments in the amount of $298.00 for thirty-six (36) months. Wiegands' original Form 22C show a below-median income at lines 15 and 16, and therefore the box marked for a 3-year commitment period is filled in at Line 17. Debtor Warren Wiegand's monthly business income on line 3c is stated as $1,382, after gross receipts on line 3a of $6,192.00 are reduced by deducting ordinary and necessary business expenses of $4,810.00 at line 3b.

The hearing on confirmation was set for September 21, 2007. The Chapter 13 Trustee filed an objection to confirmation on July 17, 2007, on the grounds Debtors incorrectly calculated their income and applicable commitment period on Form 22C by deducting Warren Wiegand's business expenses on line 3b, and failed to commit all their disposable income to fund their Plan. At the hearing the Trustee stated that his position is that Form 22C is incorrect at line 3b because it allows debtors to deduct business expenses from current monthly income, before calculating the applicable commitment period under Part II of Form 22C, and determining disposable income in Part III of Form 22C. The Trustee argues that such deductions for business expenses should not occur until calculating disposable income pursuant to § 1325(b)(2) and (b)(3) under

---

[2]The Trustee has filed a notice of appeal of that Order and a motion for stay pending appeal.

Part IV and V of Form 22C.  Debtors filed a memorandum in response to the Trustee's objection on September 19, 2007 (Docket no. 29), with a copy of Warren Wiegand's Schedule C from his income tax form 1040 for 2006, and Wiegand Trucking, LLC's income and expense statements for the six month period ending on the last day of the calendar month immediately preceding the date of filing of the Debtors' Chapter 13 petition.  Debtors' memorandum contends that they should be entitled to deduct their ordinary and necessary expenses incurred in the operation of their business from business revenues as allowed under pertinent Internal Revenue Code ("IRC") provisions, Title 26, U.S.C., and as allowed pursuant to the language of Form 22C itself, when calculating current monthly income.

The Court overruled the Trustee's objection at the hearing, but ordered the Debtors to amend their Plan for other reasons.  Confirmation was reset for October 12, 2007.

## DISCUSSION

The Trustee's objections raise the issue of the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> * * * *
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to made payments to unsecured creditors under the plan.

See In re Sutton, 19 Mont. B.R. 220, 227-28 (Bankr. D. Mont. 2001) (construing § 1325(b)(1)(B) prior to 2005 revisions).

"Disposable income," as defined at § 1325(b)(2), underwent substantial revision in the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"). BAPCPA became effective for purposes of the instant case on October 17, 2005.

Section 1325(b)(2) now provides, in pertinent part:

> For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*In re Tuss*, 360 B.R. 684, 691 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241-42 (Bankr. D. Mont. 2006).

"Current monthly income" is defined at 11 U.S.C. § 101(10A):

The term "current monthly income" –

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

4

>>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor foes not file the schedule of current income required by section 521(a)(1)(B)(ii); and

>> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

"Applicable commitment period" is defined at subsection 1325(b)(4) which provides:

> For purposes of this subsection, the "applicable commitment period"–

>> (A) subject to subparagraph (B), shall be –

>>> (i) 3 years; or

>>> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –

>>>> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

>>>> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

>>>> (III) in the case of a debtor in a household exceeding 4 individuals,

5

> the highest median family income of
> the applicable State for a family of 4
> or fewer individuals, plus $525 per
> month for each individual in excess
> of 4; and
>
> (B) may be less than 3 or 5 years, whichever is applicable under
> subparagraph (A), but only if the plan provides for payment in full
> of all allowed unsecured claims over a shorter period.

The Chapter 13 Trustee's objection to confirmation contends that Debtors incorrectly calculated their income under Part I on Form 22C by deducting ordinary and necessary business expenses in line 3b., and thus incorrectly calculated their applicable commitment period under Part II of Form 22C, which he argues should be 5 years, thus failing to satisfy the disposable income test. The Trustee's position in this and other cases, including *In re Featherston*, 07-60296-13, appears to be that debtors may not deduct expenses from gross business revenues under § 101(10A) and 1325(b) in calculating current monthly income, because those statutes do not provide for such deduction and debtors are bound by the statutory language. Trustee contends that such deductions should only occur later in Parts IV and V of Form 22C. In *Featherston*, the Trustee cited an article by Hon. Eugene R. Wedoff's article "*Means Testing in the New § 707(b)*", AM. BANKR. L.J., Vol 79, Issue 2, p. 231, as authoritative. Judge Wedoff's article states at 244-45:

> Paragraph A of § 110(10A)[3] sets out its general rule that all "income" received by
> the debtor(s) should be included in calculating current monthly income. There is
> no definition of "income" in the Bankruptcy Code. However, because §
> 110(10A)(A) distinguishes between "income from all sources" and "taxable
> income," it appears to reflect the distinction in the Internal Revenue Code between
> "gross income," and "taxable income." Accordingly, the Internal Revenue Code

---

[3]The citation to § 110(10A) is a typo in the article, and should read § 101(10A) throughout the above-quoted excerpt.

> should provide general guidance for determining the "income" used in § 110(10A)(A). That guidance includes a long list of items that constitute "income," such as compensation for services, *business earnings*, gains on dealing in property, interest, rents, royalties, dividends, alimony and maintenance, pensions, prizes and awards, and unemployment compensation.

(Emphasis added and footnotes omitted).

At the hearing the Court noted that several sections of the Internal Revenue Code ("IRC") provide guidance in determining income. The Chapter 13 Trustee did not explain why "income" in § 101(10A) and § 1325 should have a different definition than "income" as defined under other federal statutes such as the IRC, and cites no case authority. "Income" under the Internal Revenue Code is the subject of numerous statutes, and case law construing the term.

As noted by Judge Wedoff, § 61(a) of Title 26, U.S.C., generally defines gross income. *See* § 61(a)(1) through 61(a)(15). Section 61(b) specifically provides: "For items specifically included in gross income, see part II (sec. 71 and following). For items specifically excluded from gross income, see part III (sec. 101 and following)." As an example, lines 7 through 21 (and accompanying Schedules) of Form 1040 for 2006 contain the calculations for gross income (total income) on line 22. These specific lines, e.g., line 12, incorporate the taxpayer's business income or loss from Schedule C, which allows deductions for trade and business expenses. Section 62 of Title 26, U.S.C. directs that adjusted gross income means gross income minus certain deductions including trade and business expenses. Additional regulations promulgated the U.S. Department of Treasury at 26 C.F.R. § 1.62-1, in general, and at § 1.62-1T(c) in particular, allow deductions attributable to a trade or business.

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." *Commissioner v. Lincoln*

*Savings & Loan Ass'n.*, 403 U.S. 345, 352-53, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1970) (citing cases). Expenses are ordinary for purposes of § 162(a) if they are normal and customary under the circumstances, and expenses are necessary if they are appropriate and helpful in carrying on the taxpayer's trade or business. *Id.* at 353; *Wright v. C.I.R.,* 1992 WL 15593 (Tax Court). 26 C.F.R. 1.162-1(a) provides in pertinent part:

> Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, except items which are used as the basis for a deduction or a credit under provisions of law other than section 162. The cost of goods purchased for resale, with proper adjustment for opening and closing inventories, is deducted from gross sales in computing gross income.... Among the items included in business expenses are management expenses, commissions . . ., labor, supplies, incidental repairs, operating expenses of automobiles used in the trade or business, traveling expenses while away from home solely in the pursuit of a trade or business, advertising and other selling expenses, together with insurance premiums against fire, storm, theft, accident, or other similar losses in the case of a business, and rental for the use of business property. No such items shall be included in business expenses, however, to the extent that it is used by the taxpayer in computing the cost of property included in its inventory or used in determining the gain or loss basis of its plant, equipment, or other property.... A deduction for an expense paid or incurred after December 30, 1969, which would otherwise be allowable under section 162 shall not be denied on the grounds that allowance of such deduction would frustrate a sharply defined public policy.... The full amount of the allowable deduction for ordinary and necessary expenses in carrying on a business is deductible, even through such expenses exceed the gross income during the taxable year from such business.

The Trustee does not raise the issue of whether Warren's business expenses are ordinary and necessary, but rather argues that Form 22C is incorrect at line 3b in allowing expenses to be deducted prior to calculating total income in Part I, commitment period in Part II and § 1325(b)(3) disposal income in Part III.

The United States Supreme Court in *Merchants' L. & T. Co. v. Smietanka*, 255 U.S. 509, 517-20, 41 S.Ct. 386, 388-89, 65 L.Ed. 751 (1921), discussed the meaning of "income" under

8

versions of the federal Income Tax Act, the Corporation Excise Tax of 1909, and the Sixteenth Amendment to the United States Constitution and concludes that "income" was defined as "the gain derived from capital, from labor, or from both combined". 255 U.S. at 517, 41 S.Ct. at 388. That definition was "frequently approved" and received an addition so that it read: "'Income may be defined as the gain derived from capital, from labor, or from both combined,' *provided it be understood to include profit gained through a sale or conversion of capital assets.' Eisner v. Macomber,* 255 U.S. 189, 207." *Merchants' L. & T. Co. v. Smietanka*, 255 U.S. at 517-18, 41 S.Ct. at 388 (emphasis in original). The Court wrote that with the addition 'there would seem to be no room to doubt that the word [income] must be given the same meaning in all of the Income Acts of Congress that was given to it in the Corporation Excise Tax Act and that what that meaning is has now become definitely settled by decisions of this court." *Id.* at 519, 41 S.Ct. at 389. As recently as this current year the United States Tax Court continues to cite *Merchants' L. & T. Co. v. Smietanka* for its "accepted definition of income" to include gain or profit. *Quartemont v. C.I.R.*, 2007 WL 397073 (U.S. Tax Ct.).

The Tax Court in *Butchko v. C.I.R.*, T.C. Memo. 1978-209, 1978 WL 2902, *aff'd* 638 F.2d 1214 (9th Cir. 1981), summarized gross income, adjusted gross income and taxable income as follows:

> . . . gross income is defined as all gain from whatever source derived unless specifically excluded by law. Adjusted gross income is gross income less certain specified deductions. Taxable income is adjusted gross income less personal exemptions and itemized deductions or, in lieu of itemized deductions, the standard deduction.

The Chapter 13 Trustee provides no authority, or other reason, why this Court should depart from Judge Wedoff's analysis and long-settled United States Supreme Court authority

9

allowing ordinary and necessary trade or business expenses in defining income, such as in the instant case, just as in *Commissioner v. Lincoln Savings & Loan Ass'n.*, 403 U.S. at 352-53, *Merchants' L. & T. Co. v. Smietanka*, 255 U.S. at 519-20, and Tax Court authority determining how "income" is determined.  Accordingly, in determining "current monthly income" under 11 U.S.C. § 101(10)(A) and disposable income under 11 U.S.C. § 1325(b), this Court will follow the longstanding definitions of "income" and of "adjusted gross income" permitting debtors to deduct basis and allowable ordinary and necessary business expenses under the IRC as though they were preparing their Form 1040, with related schedules and forms.  *See* 26 U.S.C. §§ 61(a)(3) and 62, 26 C.F.R § 1.61-6(a) and 1.62-1 and 1.62-1T.  The Court concludes that current monthly income calculated pursuant to 11 U.S.C § 101(10A) emanates from all sources that is consistent with the total income calculated on an individual's Form 1040.

      As noted above the Court has previously ruled on this issue and this memorandum provides the Court's reasoning for its decision entered in this case as Docket No. 30.

      BY THE COURT

      /s/ Ralph B. Kirscher
      HON. RALPH B. KIRSCHER
      U.S. Bankruptcy Judge
      United States Bankruptcy Court
      District of Montana